# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JESÚS RAFAEL CASTILLO-SALAS, )<br><br>Petitioner, )<br><br>v. )<br><br>CHRIS GANTT, Warden, Cimarron Correctional Facility, et al., )<br><br>Respondents.[1] ) | Case No. CIV-26-906-PRW |

## REPORT AND RECOMMENDATION

Petitioner Jesus Rafael Castillo-Salas, a noncitizen,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[3] United States District Judge Patrick R. Wyrick referred the case to the undersigned Magistrate Judge under

---

[1] Warden Chris Gantt is the current Warden of the Cimarron Correctional Facility and is substituted for former Warden Scarlet Grant as a party in this matter. https://www.corecivic.com/facilities/cimarron-facility (last visited June 30, 2026). Warden Gantt is not a federal official, and the response is not filed on his behalf. *See* Doc. 13, at 1 n.1.

[2] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3] Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded, Doc. 13, and Petitioner replied, Doc 14. So the matter is at issue.

For the reasons below, the undersigned recommends the Court deny Petitioner's habeas petition, Doc. 1.

## I.    Factual background and Petitioner's claims.

Petitioner is a citizen of Venezuela who entered the United States on June 12, 2022, according to Department of Homeland Security (DHS) records. Doc. 13, Ex. 4, at 2. On June 14, 2022, DHS paroled him into the United States and released him. *Id.*; Doc. 1, at 6. He then applied for Temporary Protected Status (TPS). Doc. 1, at 6.

On August 29, 2022, DHS issued a Notice to Appear (NTA) to Petitioner, charging him as removable under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA). Doc. 13, at 2 (citing Ex. 2).[4] On May 16, 2025, United States Citizenship & Immigration Services notified Petitioner "that his TPS application was approved" and "valid through October 2, 2026." Doc. 1, at 6-7

---

[4]    This section is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I). That section provides that any noncitizen, who at the time of application for admission, was not in possession of (1) a valid unexpired entry document as required by the INA, and (2) a valid travel document/document of identity and nationality as required by regulations is inadmissible. 8 U.S.C. § 1182(a)(7)(A)(i).

(citing Ex. 1). On February 24, 2026, Petitioner was detained by Immigration & Customs Enforcement (ICE) during his routine check-in. *Id.* at 7.

On April 28, 2026, DHS issued a second NTA to Petitioner, charging him as removable under Section 212(a)(6)(A)(i) of the INA. Doc. 13, Ex. 1.[5]

Petitioner raises two claims for relief:

(1)     Violation of the INA; and

(2)     Violation of the Due Process Clause of the Fifth Amendment.

Doc. 1, at 10-11. At bottom, Petitioner maintains his detention is unlawful because his TPS status bars his detention. *Id.* at 7-8. He asks the Court to assume jurisdiction over this matter; order Respondents to show cause as to why the writ should not be granted within three days, and set a hearing on his petition within five days of return;[6] declare that his detention violates federal law and the Due Process Clause; order Respondents to immediately release him from their custody; "[e]njoin Respondents from further detaining [him] at

---

[5]     This section is codified at 8 U.S.C. § 1182(a)(6)(A)(i). That section provides that a noncitizen who is present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General is ineligible to be admitted to the United States. *Id.* § 1182(a)(6)(A)(i).

[6]     The Court addressed Petitioner's requests when it directed Respondents to respond to the Petition, *see* Doc. 10, and determines a hearing is not necessary to adjudicate the petition.

3

least so long as the December 10[7] Order remains in effect"; and award him reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 and 28 U.S.C. § 2412. *Id.* at 11-12.

## II.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## III.   Analysis.

### A.    TPS designation.

---

[7]    Petitioner maintains that he is a member of the National TPS Alliance (NPTSA) class. Doc. 1, at 2. In *Nat'l TPS All. v. Noem,* 2025 WL 3539156 (N.D. Cal. Dec. 10, 2025), the Northern District of California issued a declaratory judgment providing that: "(1) the vacatur of the January 17, 2025, TPS extension for Venezuela was unlawful as was (2) the termination of Venezuela's TPS designation on February 5, 2025." *Id. at* 2.

Section 1254a(a) authorizes the DHS Secretary[8] to grant noncitizens "from countries experiencing conditions that make it unsafe or impossible for their citizens to return home," TPS status. *Gonzalez v. Casey,* 2026 WL 1333767, at *2 (S.D. Cal. May 13, 2026) (citing 8 U.S.C. § 1254a(a)). Granting a noncitizen TPS bars the Government from removing them "from the United States during the period in which such status is in effect," and allows the noncitizen to "engage in employment in the United States." 8 U.S.C. § 1254a(a)(1)(A)-(B). The initial effectiveness period of a country designated TPS "take[s] effect upon the date of publication of the designation" and lasts "not less than 6 months and not more than 18 months." *Id.* § 1254a(B)(2). The Secretary must review the conditions in the designated country "[a]t least 60 days before the end of the initial period." *Id.* § 1254a(B)(3)(A). And if the Secretary "determinates . . . that a foreign state . . . no longer continues to meet the conditions for designation . . . [the Secretary] shall terminate the designation by publishing notice in the Federal Register." *Id.* § 1254a(B)(3)(B). The Secretary may also extend "the period of designation . . . for an additional . . . 6 months (or, in the discretion of the [Secretary], a period of 12 or 18

---

[8]    'Section 1254a originally granted this authority to the Attorney General, who subsequently delegated it to the Secretary of DHS." *Granadillo-Arambule v. Daley*, 2026 WL 1157161, at *1 n.1 (E.D. Ky. Apr. 29, 2026).

months." *Id.* And "[t]o be eligible for TPS, a particular noncitizen must be continuously present in the United States since the effective date of the most recent designation of his or her country of origin, must have continuously resided in the United States since such date, must be admissible as an immigrant, and must have timely applied for TPS during the registration period." *Granadillo-Arambule,* 2026 WL 1157161, at *1.

The DHS Secretary initially designated Venezuela for TPS in March 2021 and renewed the country's TPS designation on October 3, 2023, with a projected end date of April 2, 2025. Designation of Venezuela for Temporary Protected Status and Implementation of Emp. Authorization for Venezuelans Covered by Deferred Enforced Departure, 86 Fed. Reg. 13574 (Mar. 9, 2021); Extension and Redesignation of Venezuela for Temporary Protected Status, 88 Fed. Reg. 68130 (Oct. 3, 2023). On January 17, 2025, DHS extended the 2023 designation to October 2, 2026. *See* Extension of the 2023 Designation of Venezuela for Temporary Protected Status, 90 FR 5961 (Jan. 17, 2025). In February 2025, former DHS Secretary Kristi Noem vacated the 2025 extension and terminated the 2023 designation, resulting in the present litigation. *See* Vacatur of 2025 Temporary Protect Status Decision for Venezuela, 90 Fed. Reg. 8805 (Feb. 3, 2025); Termination of the Oct. 3, 2023, Designation of Venezuela for Temporary Protected Status, 90 Fed. Reg. 9040 (Feb. 5, 2025).

**B.      Petitioner's habeas claims must be dismissed.**

The crux of Petitioner's habeas claims is that his detention is unlawful due to his TPS status. And for the Court to find in Petitioner's favor, it would require it determine whether the DHS Secretary's vacatur and termination of Venezuela's TPS status was unlawful. However, the Court lacks jurisdiction to review the DHS Secretary's termination of Petitioner's TPS status by the plain language of the TPS statute. *See Mullin v. Doe,* Nos. 25-1038 & 25-1084, 609 U.S. ----, 2026 WL 1825840, at *2 (June 25, 2026) ("The TPS statute plainly bars consideration of respondents' non-constitutional claims. It allows 'no judicial review of any determination . . . with respect to the . . . termination' of a TPS designation." (citing 8 U.S.C. § 1254a(b)(5)(A)). So, on February 24, 2026, when Petitioner was detained, his preexisting TPS status was no longer effective, and ICE could lawfully detain him and initiate his removal proceedings under 8 U.S.C. § 1226.[9]

---

[9]      Petitioner, relying on *Nat'l TPS,* argues the Court must give the Northern District of California's declaratory judgment preclusive effect and find Petitioner's TPS unlawfully terminated. Doc. 1, at 2. *Doe* only addresses the termination of TPS for Haiti and Syria, but the undersigned finds § 1254a(b)(5)(A) also bars this Court from reviewing the DHS Secretary's termination of Venezuela's TPS. S*ee Doe,* 2026 WL 1825840, at *5 (noting that the Government has defended its TPS terminations by relying on "the judicial-review bar in § 1254a(b)(5)(A), but the lower courts have consistently rebuffed that argument" and that "[t]he Government . . . led with that jurisdictional argument in asking [the Supreme Court] to stay two District Court orders . . .

Likewise, Petitioner's due process claim (intertwined with his INA claim) also must be denied. "[N]oncitizens . . . have due process rights even though they are present in the country without ever having been admitted." *Granadillo-Arambule,* 2026 WL 1157161, at *5 (citing *Zadyvdas,* 533 U.S. 678, 693 (2001)). "However, their right to due process goes no further than the process Congress has chosen to give them." *Id.* (citing *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 138-39 (2020). Petitioner does not allege his removal proceedings are constitutionally inadequate in any way. So, "Petitioner is receiving all the process that Congress afford[s] for a noncitizen . . . not entitled to TPS and, therefore, [he] is not statutorily shielded from detention under § 1254a(d)(4)." *Id.* And his due process claim fails as a result.

## IV.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **deny** Petitioner's habeas petition, Doc. 1.

---

postpon[ing] the termination of Venezuela's TPS designation, and [the Supreme Court] granted those requests"). And, in any event, the Northern District of California's declaratory judgment has no preclusive effect in this Court as Petitioner is detained outside the boundaries of that court. *See Rumsfeld v. Padilla,* 542 U.S. 426, 435, 443 (2004) ("[I]n habeas challenges to present physical confinement," "jurisdiction lies in only one district: the district of confinement").

8

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 21, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 30th day of June, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

9